UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANGELA ADAMS LICENSING, LLC and<br>ANGELA ADAMS DESIGNS, LLC<br><br>      Plaintiffs,<br> v.<br><br>WAL-MART STORES, INC.,<br>WAL-MART.COM, INC. and<br>HOMESTEAD INTERNATIONAL<br>  GROUP LTD.<br><br>      Defendants. | Civil Action No. _____<br><br>JURY DEMANDED |

**COMPLAINT**
**(Injunctive Relief Sought)**

Plaintiffs ANGELA ADAMS LICENSING, LLC and ANGELA ADAMS DESIGNS, LLC (collectively "AA LLC") bring this action against defendants Wal-mart Stores, Inc., Wal-mart.com, Inc. (together the "Wal-mart Defendants"), and Homestead International Group Ltd. (collectively "Defendants") and assert:

**INTRODUCTION**

1. From 2005 to 2008, Plaintiffs shared copyrighted designs with Defendant Homestead International Group Ltd. and its predecessor-in-interest, Homestead Holdings, Inc., for the purpose of developing a branded Angela Adams home décor collection, including, but not limited to, comforters, sheets, pillow shams and decorative pillows. In 2010, Plaintiffs discovered that a new line of home décor products had been launched in Wal-mart stores and online through Wal-mart.com that are substantially similar to designs and products that Plaintiffs

had developed for Defendant Homestead.  In this action, AA LLC seeks an injunction and damages for Defendants' willful copyright infringement of multiple AA LLC copyrights.

## THE PARTIES, JURISDICTION AND VENUE

2. Plaintiff Angela Adams Licensing, LLC is a Maine limited liability company with its principal place of business at 273 Congress Street, Portland, Maine.  It owns each of the copyrights asserted to have been infringed by Defendants in this action.

3. Plaintiff Angela Adams Designs, LLC is also a Maine limited liability company with its principal place of business at 273 Congress Street, Portland, Maine.  It is a licensee of each of the copyrights asserted to have been infringed by Defendants in this action.

4. Defendant Wal-mart Stores, Inc. is a Delaware corporation with a principal place of business at 702 SW 8th Street, Bentonville, Arkansas.  Upon information and belief, Defendant Wal-mart Stores, Inc. owns and operates Wal-mart retail stores located throughout the United States.

5. Defendant Wal-mart.com, Inc. is a Delaware corporation with a principal place of business at 702 SW 8th Street, Bentonville, Arkansas.  Upon information and belief, Defendant Wal-mart.com, Inc. owns and operates the online Wal-mart.com retail store.

6. Defendant Homestead International Group Ltd. is a Delaware corporation with a principal place of business at 1359 Broadway, 16th floor, New York, New York.   Upon information and belief, Defendant Homestead is a supplier of home fashions products to the Wal-mart Defendants.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) (copyright) and 28 U.S.C. § 1331 (federal question).

8. This Court has personal jurisdiction over the Wal-mart Defendants, who regularly conduct business in this District, including the sale of the accused products through the online Wal-mart.com store, including making such products available for pick-up at Maine locations, and through numerous physical retail locations in such cities as Falmouth and South Portland.

9. This Court has personal jurisdiction over Defendant Homestead by virtue of its extensive business contacts in this District, including, but not limited to, its business relationship with Plaintiffs beginning in 2005 and continuing to the present.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(c) as Defendants are subject to personal jurisdiction in this district.

## PLAINTIFFS' COPYRIGHTS

11. In 1999, Angela Adams was duly issued U.S. copyright registration number VAu 448-267 (with an effective date of February 10, 1999) for a design with the title "Manfred," a true and accurate copy of which is attached hereto as Exhibit 1. On October 27, 2004, this copyright registration was assigned to Plaintiff Angela Adams Licensing, LLC.

12. In 2000, Angela Adams was duly issued U.S. copyright registration number VAu-499-775 (with an effective date of July 27, 2000) for a design with the title "Spike," a true and accurate copy of which is attached hereto as Exhibit 2. On October 27, 2004, this copyright registration was assigned to Plaintiff Angela Adams Licensing, LLC.

13. In 2008, Plaintiff Angela Adams Licensing, LLC was duly issued U.S. copyright registration number VA 1-634-407 (with an effective date of March 20, 2008) for a design with the title "Casco," a true and accurate copy of which is attached hereto as Exhibit 3.

14. In 2008, Plaintiff Angela Adams Designs, LLC was duly issued U.S. copyright registration number VAu 647-931 (with an effective date of November 30, 2004) for a design

with the title "Pebble," a true and accurate copy of which is attached hereto as Exhibit 4.  On May 24, 2006, this copyright registration was assigned to Plaintiff Angela Adams Licensing, LLC.

15.  In 2005, Plaintiff Angela Adams Licensing, LLC was duly issued U.S. copyright registration number VAu 682-728 (with an effective date of July 5, 2005) for a design with the title "Easton," a true and accurate copy of which is attached hereto as Exhibit 5.

## DEFENDANTS' WRONGFUL CONDUCT

16.  In 2006, Plaintiff Angela Adams Licensing, LLC entered into a licensing agreement (hereafter "License") with Homestead Holdings, Inc.  Homestead Holdings, Inc. subsequently assigned its interest in the License to Defendant Homestead International Group Ltd.

17.  Pursuant to the License, Plaintiffs licensed certain copyrights and trademarks for placement on bedding and bath products to be marketed, distributed, and sold by Defendant Homestead as a branded Angela Adams collection of retail products.

18.  Even prior to executing the License, however, Plaintiffs and Homestead had been working together to develop a collection of home textile products bearing Plaintiffs' copyrighted designs and trademark with the hope of obtaining placement with a major retailer.

19.  In 2006 and 2007, Plaintiffs provided to Defendant Homestead several designs for bedding, including comforters, sheets and pillow shams, bearing Plaintiffs' copyrighted Manfred design.

20.  Upon information and belief, Defendant Homestead subsequent to 2007 developed a substantially similar bedding design, which is being sold in both Wal-mart stores and online through Wal-mart.com.  A side-by-side comparison of the design created by Plaintiffs and the bedding currently sold by Defendants is below:



**AA LLC's "Manfred" Bedding 2007**



**Defendants' "Ellington" Bedding**

21.     Upon information and belief, Defendant Homestead, also subsequent to 2007, developed a decorative pillow that is substantially similar to Plaintiffs' Manfred copyright. Attached as Exhibit 6 are images of Defendants' "Ellington" bedding and "Lyra" decorative pillow.

22.     In the fall of 2005, Plaintiffs developed and provided to Defendant Homestead a design of a decorative pillow bearing Plaintiffs' copyrighted Spike design.

23.     Defendant Homestead had a sample decorative pillow made based on the design supplied by Plaintiffs, which pillow was thereafter presented at the home textiles market in New York, selected by Bed, Bath & Beyond, and sold through Bed, Bath & Beyond stores throughout the United States.

24.     Upon information and belief, Defendant Homestead subsequently developed a decorative pillow (an image of which is attached as Exhibit 7) that is substantially similar to Plaintiffs' Spike copyright, and which is being sold in both Wal-mart stores and online through Wal-mart.com.  A side-by-side comparison of the design created by Plaintiffs and the "Mandala" pillow currently sold by Defendants is below:

5




**AA LLC "Spike" Pillow 2005**  **Defendants' "Mandala" Pillow**

25. Also in the fall of 2005, Plaintiffs designed a decorative pillow bearing a design that has come to be known as the "Casco" design. Defendant Homestead created or caused to be created a sample based on Plaintiffs' design that was shown at the New York home textiles market in or around the winter of 2005-2006.

26. Later, in or around 2007, Plaintiffs designed bedding, specifically a comforter, bearing the Casco design, which design Plaintiffs provided to Defendant Homestead.

27. Upon information and belief, Defendant Homestead developed a decorative pillow (an image of which is attached as Exhibit 8) that is substantially similar to Plaintiffs' Casco copyright, and which is being sold in both Wal-mart stores and online through Wal-mart.com. A side-by-side comparison of the design created by Plaintiffs and the "Space Dots" pillow sold by Defendants is below:


**AA LLC "Casco" Bedding**


**Defendants' "Space Dots" Pillow**

28. Plaintiffs also developed a decorative pillow design bearing the copyrighted "Pebble" design, which pillow was exhibited at the home textiles market in New York in the fall of 2008.

29. Upon information and belief, Defendant Homestead developed a decorative pillow (an image of which is attached as Exhibit 9) that is substantially similar to Plaintiffs' copyrighted Pebble design, and which is sold through Wal-mart stores and online through Wal-mart.com. A side-by-side comparison of the design created by Plaintiffs and the "Costa" pillow sold by Defendants is below:


**AA LLC "Pebble" Pillows 2008**

**Defendants' "Costa" Pillow**

30. Defendant Wal-mart.com, Inc. has additionally sold decorative wall art (an image of which is attached as Exhibit 10) that is substantially similar to Plaintiffs' copyrighted Easton design. A side-by-side comparison of the Plaintiffs' Easton copyright and the "Sacha" wall art sold through Wal-mart.com is below:


**AA Easton Copyright 2005**


**Hometrends Sacha Wall Art**

31. On August 23, 2010, Plaintiffs' attorneys, Pierce Atwood, LLP, sent a cease and desist letter to Defendant Wal-mart Stores, Inc., a true and accurate copy of which is attached (excluding the attachments) as Exhibit 11.

32. By telephone call on or about September 27, 2010, counsel for Wal-mart advised that seven of the nine items identified in the cease-and-desist letter had been supplied by Defendant Homestead. Counsel for Wal-mart additionally advised that he would forward the cease-and-desist letter directly to Homestead.

33. By letter dated October 18, 2010, Plaintiffs' attorneys, Pierce Atwood LLP, sent a separate cease and desist letter to Defendant Homestead, a true and accurate copy of which is attached (excluding the attachments) as Exhibit 12.

34. Defendant Homestead has not responded to this letter.

## COUNT ONE:
## COPYRIGHT INFRINGEMENT OF THE MANFRED COPYRIGHT
## ("ELLINGTON" BEDDING)

35.     Plaintiffs repeat and reallege the averments in paragraphs 1 through 34.

36.     Defendants market, distribute, sell and offer for sale bedding products called "Ellington" that infringe the AA LLC Manfred copyright, and it will continue to do so unless and until they are enjoined by this Court.

37.     Defendants' actions were and continue to be conducted with knowledge that they were and are in violation AA LLC'S Manfred copyright under 17 U.S.C. § 106.

38.     AA LLC'S designs, especially including the infringed Manfred design, are very popular and have become very well-known to persons in the trade and to the consuming public.

39.     Defendants' infringing actions have caused and will continue to cause irreparable harm to AA LLC, including, but not limited to lost sales, lost licensing opportunities, price erosion, injury to AA LLC's goodwill and reputation, and encouragement of infringement by others.

40.     The commercial value of AA LLC'S copyrights will be lost if Defendants continue their unlawful copying and commercial exploitation of Plaintiffs' Manfred design.

41.     Upon information and belief, as a result of Defendants' unlawful copying and exploitation of AA LLC's Manfred design, Defendants have and will continue to profit not only by the sale of the infringing products but also by enhanced sales of related, non-infringing products.

42.     Defendants' wrongful conduct has and will encourage other competitors to engage in similar copying.

43. By virtue of Defendants' wrongful acts as set forth herein, AA LLC has been damaged in an amount presently unknown to AA LLC.

44. AA LLC is without an adequate remedy at law to redress all of the injuries that Defendants have caused and will cause by their conduct. Furthermore, AA LLC will continue to suffer irreparable harm to its reputation and good will until Defendants' infringement is enjoined by this Court.

## COUNT TWO:
## COPYRIGHT INFRINGEMENT OF THE MANFRED COPYRIGHT
## ("LYRA" PILLOWS)

45. Plaintiffs repeat and reallege the averments in paragraphs 1 through 44.

46. Defendants market, distribute, sell and offer for sale decorative "Lyra" pillows that infringe the AA LLC Manfred copyright, and it will continue to do so unless and until they are enjoined by this Court.

47. Defendants' actions were and continue to be conducted with knowledge that they were and are in violation AA LLC'S Manfred copyright under 17 U.S.C. § 106.

48. AA LLC'S designs, especially including the infringed Manfred design, are very popular and have become very well-known to persons in the trade and to the consuming public.

49. Defendants' infringing actions have caused and will continue to cause irreparable harm to AA LLC, including, but not limited to lost sales, lost licensing opportunities, price erosion, injury to AA LLC's goodwill and reputation, and encouragement of infringement by others.

50. The commercial value of AA LLC'S copyrights will be lost if Defendants continue their unlawful copying and commercial exploitation of Plaintiffs' Manfred design.

51. Upon information and belief, as a result of Defendants' unlawful copying and exploitation of AA LLC's Manfred design, Defendants have and will continue to profit not only by the sale of the infringing products but also by enhanced sales of related, non-infringing products.

52. Defendants' wrongful conduct has and will encourage other competitors to engage in similar copying.

53. By virtue of Defendants' wrongful acts as set forth herein, AA LLC has been damaged in an amount presently unknown to AA LLC.

54. AA LLC is without an adequate remedy at law to redress all of the injuries that Defendants have caused and will cause by their conduct.  Furthermore, AA LLC will continue to suffer irreparable harm to its reputation and good will until Defendants' infringement is enjoined by this Court.

## COUNT THREE: COPYRIGHT INFRINGEMENT OF THE SPIKE COPYRIGHT

55. Plaintiffs repeat and reallege the averments in paragraphs 1 through 54.

56. Defendants market, distribute, sell and offer for sale decorative "Mandala" pillows that infringe the AA LLC Spike copyright, and it will continue to do so unless and until they are enjoined by this Court.

57. Defendants' actions were and continue to be conducted with knowledge that they were and are in violation AA LLC'S Spike copyright under 17 U.S.C. § 106.

58. AA LLC'S designs, especially including the infringed Spike design, are very popular and have become very well-known to persons in the trade and to the consuming public.

59.     Defendants' infringing actions have caused and will continue to cause irreparable harm to AA LLC, including, but not limited to lost sales, lost licensing opportunities, price erosion, injury to AA LLC's goodwill and reputation, and encouragement of infringement by others.

60.     The commercial value of AA LLC'S copyrights will be lost if Defendants continue their unlawful copying and commercial exploitation of Plaintiffs' Spike design.

61.     Upon information and belief, as a result of Defendants' unlawful copying and exploitation of AA LLC's Spike design, Defendants have and will continue to profit not only by the sale of the infringing products but also by enhanced sales of related, non-infringing products.

62.     Defendants' wrongful conduct has and will encourage other competitors to engage in similar copying.

63.     By virtue of Defendants' wrongful acts as set forth herein, AA LLC has been damaged in an amount presently unknown to AA LLC.

64.     AA LLC is without an adequate remedy at law to redress all of the injuries that Defendants have caused and will cause by their conduct.  Furthermore, AA LLC will continue to suffer irreparable harm to its reputation and good will until Defendants' infringement is enjoined by this Court.

**COUNT FOUR:**
**COPYRIGHT INFRINGEMENT OF THE CASCO COPYRIGHT**

65.     Plaintiffs repeat and reallege the averments in paragraphs 1 through 64.

66.     Defendants market, distribute, sell and offer for sale decorative "Space Dots" pillows that infringe the AA LLC Casco copyright, and it will continue to do so unless and until they are enjoined by this Court.

67. Defendants' actions were and continue to be conducted with knowledge that they were and are in violation AA LLC'S Casco copyright under 17 U.S.C. § 106.

68. AA LLC'S designs, especially including the infringed Casco design, are very popular and have become very well-known to persons in the trade and to the consuming public.

69. Defendants' infringing actions have caused and will continue to cause irreparable harm to AA LLC, including, but not limited to lost sales, lost licensing opportunities, price erosion, injury to AA LLC's goodwill and reputation, and encouragement of infringement by others.

70. The commercial value of AA LLC'S copyrights will be lost if Defendants continue their unlawful copying and commercial exploitation of Plaintiffs' Casco design.

71. Upon information and belief, as a result of Defendants' unlawful copying and exploitation of AA LLC's Casco design, Defendants have and will continue to profit not only by the sale of the infringing products but also by enhanced sales of related, non-infringing products.

72. Defendants' wrongful conduct has and will encourage other competitors to engage in similar copying.

73. By virtue of Defendants' wrongful acts as set forth herein, AA LLC has been damaged in an amount presently unknown to AA LLC.

74. AA LLC is without an adequate remedy at law to redress all of the injuries that Defendants have caused and will cause by their conduct.  Furthermore, AA LLC will continue to suffer irreparable harm to its reputation and good will until Defendants' infringement is enjoined by this Court.

## COUNT FIVE:
## COPYRIGHT INFRINGEMENT OF THE PEBBLE COPYRIGHT

75.  Plaintiffs repeat and reallege the averments in paragraphs 1 through 74.

76.  Defendants market, distribute, sell and offer for sale decorative "Costa" pillows that infringe the AA LLC Pebble copyright, and it will continue to do so unless and until they are enjoined by this Court.

77.  Defendants' actions were and continue to be conducted with knowledge that they were and are in violation AA LLC'S Pebble copyright under 17 U.S.C. § 106.

78.  AA LLC'S designs, especially including the infringed Pebble design, are very popular and have become very well-known to persons in the trade and to the consuming public.

79.  Defendants' infringing actions have caused and will continue to cause irreparable harm to AA LLC, including, but not limited to lost sales, lost licensing opportunities, price erosion, injury to AA LLC's goodwill and reputation, and encouragement of infringement by others.

80.  The commercial value of AA LLC'S copyrights will be lost if Defendants continue their unlawful copying and commercial exploitation of Plaintiffs' Pebble design.

81.  Upon information and belief, as a result of Defendants' unlawful copying and exploitation of AA LLC's Pebble design, Defendants have and will continue to profit not only by the sale of the infringing products but also by enhanced sales of related, non-infringing products.

82.  Defendants' wrongful conduct has and will encourage other competitors to engage in similar copying.

83.  By virtue of Defendants' wrongful acts as set forth herein, AA LLC has been damaged in an amount presently unknown to AA LLC.

84. AA LLC is without an adequate remedy at law to redress all of the injuries that Defendants have caused and will cause by their conduct. Furthermore, AA LLC will continue to suffer irreparable harm to its reputation and good will until Defendants' infringement is enjoined by this Court.

## COUNT SIX:
## COPYRIGHT INFRINGEMENT OF THE EASTON COPYRIGHT

85. Plaintiffs repeat and reallege the averments in paragraphs 1 through 84.

86. Defendant Wal-mart.com, Inc. has marketed, distributed, and offered for sale decorative "Sacha" wall art that infringes the AA LLC Easton copyright.

87. Defendant Wal-mart.com, Inc.'s actions were conducted with knowledge that they were and are in violation AA LLC'S Easton copyright under 17 U.S.C. § 106.

88. AA LLC'S designs, especially including the infringed Easton design, are very popular and have become very well-known to persons in the trade and to the consuming public.

89. Defendant Wal-mart.com, Inc.'s infringing actions have caused and will continue to cause irreparable harm to AA LLC, including, but not limited to lost sales, lost licensing opportunities, price erosion, injury to AA LLC's goodwill and reputation, and encouragement of infringement by others.

90. Upon information and belief, as a result of Defendant Wal-mart.com, Inc.'s unlawful copying and exploitation of AA LLC's Easton design, Defendant Wal-mart.com, Inc. has profited not only by the sale of the infringing products but also by enhanced sales of related, non-infringing products.

91. Defendant Wal-mart.com, Inc.'s wrongful conduct has and will encourage other competitors to engage in similar copying.

92. By virtue of Defendant Wal-mart.com, Inc.'s wrongful acts as set forth herein, AA LLC has been damaged in an amount presently unknown to AA LLC.

**WHEREFORE,** Plaintiffs respectfully ask the Court for the following relief:

(1) An order permanently enjoining Defendants, their officers, directors, employees, agents, servants, representatives, partners, subsidiaries, attorneys and any persons under their control or acting in concert or privity with them, or persons purporting to act on their behalf from copying, selling, licensing, distributing, preparing derivative works of, publicly displaying, exploiting, marketing, advertising, promoting, or causing or authorizing the copy, sale, license, distribution, preparation of derivative works of, public display, exploitation, marketing, advertising, or promotion of Plaintiffs' copyrighted works.

(2) An award of Plaintiffs' actual damages plus Defendants' profits pursuant to 17 U.S.C. § 504(b), or statutory damages pursuant to 17 U.S.C. § 504(c);

(3) An award of Plaintiffs' costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

(4) An award of damages and costs pursuant to 15 U.S.C. §§ 1117(a) and 1118;

(5) An order that Defendants be enjoined to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all works and products shown by the evidence to infringe Plaintiffs' copyrights; and

(6) Such other and further relief, including enhanced damages, as the Court may deem just and proper.

Dated:  January 6, 2011  /s/ Margaret Minister O'Keefe
Margaret Minister O'Keefe
Pierce Atwood LLP
One Monument Square
Portland, ME 04101
(207) 791-1100
mokeefe@pierceatwood.com

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable.

/s/ Margaret Minister O'Keefe
Margaret Minister O'Keefe