*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *ANGELA ADAMS LICENSING, LLC,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:11-cv-05-GZS* |
| | ) | *FILED UNDER SEAL* |
| *WAL-MART STORES, INC., et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY AND RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The plaintiff in this action alleging copyright infringement moves to exclude the testimony of Anais Missakian, whom the defendants intend to call as an expert witness. I deny the motion without prejudice to its reassertion before trial. The defendants move for summary judgment on all of the claims asserted against them by the plaintiff. I recommend that the court deny the motion for summary judgment.

## I.  The Motion to Exclude

### A.  Applicable Legal Standard

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

1

Fed. R. Evid. 702.  Under Rule 702, "it is the responsibility of the trial judge to ensure that an

expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and

to ensure that the testimony rests on a reliable basis."  *Beaudette v. Louisville Ladder, Inc.*, 462

F.3d 22, 25 (1st Cir. 2006).  With respect to reliability:

> In *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)], the Supreme
> Court set forth four general guidelines for a trial judge to evaluate in considering
> whether expert testimony rests on an adequate foundation: (1) whether the theory
> or technique can be and has been tested; (2) whether the technique has been
> subject to peer review and publication; (3) the technique's known or potential rate
> of error; and (4) the level of the theory or technique's acceptance within the
> relevant discipline.  However, these factors do not constitute a definitive checklist
> or test, and the question of admissibility must be tied to the facts of a particular
> case.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Zachar v. Lee*, 363 F.3d 70, 76

(1st Cir. 2004) ("The court's assessment of reliability is flexible, but an expert must vouchsafe

the reliability of the data on which he relies and explain how the cumulation of that data was

consistent with standards of the expert's profession.") (citation and internal quotation marks

omitted).

As the First Circuit has observed, "*Daubert* does not require that the party who proffers

expert testimony carry the burden of proving to the judge that the expert's assessment of the

situation is correct."  *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and

internal quotation marks omitted).  "It demands only that the proponent of the evidence show

that the expert's conclusion has been arrived at in a scientifically sound and methodologically

reliable fashion."  *Id.* (citation and internal quotation marks omitted).  That said, "nothing in

either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may

conclude that there is simply too great an analytical gap between the data and the opinion

proffered." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citation and internal quotation marks omitted).

The motion also invokes Fed. R. Evid. 403, Plaintiff's Motion to Exclude Expert Opinions ("Expert Motion") (ECF No. 132) at 1, 4.  That rule provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.  A motion to strike testimony pursuant to Rule 403 on the ground that the probative value of the testimony is outweighed by the danger of unfair prejudice, the only specific reference to Rule 403 in the motion, Expert Motion at 4, "is not appropriate in the context of summary judgment, where matters are not presented to a jury and the court does not weigh credibility or resolve disputed issues of material fact, except in extraordinary circumstances not present here.  *See, e.g., Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2002); *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 274 (3d Cir. 1991)."  *Whitney v. Wal-Mart Stores, Inc.*, No. 03-65-P-H, 2003 WL 22961210, at *4 (D. Me. Dec. 16, 2003).  Therefore, I will not consider the plaintiff's Rule 403 argument at this time.

The plaintiff attacks three of Missakian's proposed opinions:  that the plaintiff's designs lack originality, that its designs are not similar to the accused works, and that there are only a limited number of ways to express waves and pebbles.  Expert Motion at 1-3.

### 1.  Originality

The plaintiff contends that Missakian's testimony concerning originality is irrelevant.  Expert Motion at 4.  Specifically, it asserts that such testimony would be "inappropriate legal opinion," that Missakian uses an incorrect definition of originality, that she uses an unreliable

methodology to assess originality, and that the reason for which such testimony will be offered is based upon a "misunderstanding of the applicable law." *Id*. at 4-7.

With respect to the first argument, the plaintiff asserts that "courts have barred experts from testifying that works lack 'originality.'" *Id*. at 5.  The defendants respond that, when evaluating whether actual copying has occurred, a court must separate the original, protected elements of the copyrighted work from those that are unoriginal and thus not protected, citing *Johnson v. Gordon*, 409 F.3d 12, 18-19 (1st Cir. 2005)  Defendants' Opposition to Plaintiff's Motion to Exclude Expert Opinions ("Expert Opposition") (ECF No. 138) at 7.  They assert that Missakian's testimony about originality goes to this analysis of elements of the plaintiff's design and not to the validity of the copyright.  *Id*. at 6.

The plaintiff responds that one sentence in Missakian's report, which asserts that the designs are issue "are not unique[,]" shows that Missakian expresses only opinions as to the designs as a whole, rather than as to the elements of those designs.  Plaintiff's Reply in Further Support of Its Motion to Exclude Expert Opinions (of Anais Missakian) ("Expert Reply") (ECF No. 157) at 1-2.  The plaintiff then informs the court that, because the defendants "have clarified that they do not intend to offer Ms. Missakian on the issue of originality[,]" it "may then disregard Section 1 of Plaintiff's Motion, with the exception of the last two paragraphs (beginning on page 6)[.]"  *Id*. at 5.  I will do so.

The final two paragraphs of Section 1 of the motion to exclude Missakian's testimony address the plaintiff's claim that the proffered testimony is based upon a misunderstanding of applicable law.  Specifically, the plaintiff contends that the proposed testimony wrongly assumes that there is a relationship between the concepts of originality and probative similarity.  Expert

Motion at 6.[1]   The plaintiff argues in conclusory fashion that dissection of the designs at issue in this case into their constituent elements is appropriate for works of art, although the case law it cites does not support this contention, and goes on to assert that Missakian's uses of the terms "original" and "unique" "is not likely to be helpful to the Court."   Expert Reply at 5-6.   For purposes of resolving the motion for summary judgment, this court is fully capable of confining its attention only to that portion of Missakian's report that applicable precedent allows it to consider.   The plaintiff may of course raise this issue again before trial with the trial judge.

## 2.  Probative Similarity and Unreliable Methodology

The plaintiff next asserts that Missakian's proposed testimony about probative similarity is inadmissible because it "usurps the role of the jury" and because it is based on an unreliable methodology.   Expert Motion at 7-9.   The methodology alleged to be unreliable is the laying of traced images of each design over the other.   *Id*. at 7.   The plaintiff asserts that there is nothing "technical" about this methodology, and that the comparison is one that is reserved to the jury. *Id*. at 8-9.

The defendants respond that Missakian's opinions relate to both probative similarity and substantial similarity and are admissible as to both.   Expert Opposition at 5-6.   The First Circuit describes the legal test for copyright infringement in the following manner: "To establish copyright infringement under the Copyright Act, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (citation and internal quotation marks omitted).   The first element is not at issue here.   With respect to the second element, the First Circuit then stated:

---

[1] I reject the plaintiff's contention, unsupported by citation to authority, that Missakian's testimony must be excluded because her report does not use the term "probative similarity."   Expert Reply at 3.

Proof of wrongful copying is a two-step process. First, the plaintiff must show that copying actually occurred. This showing entails proof that, as a factual matter, the defendant copied the plaintiff's copyrighted material. Second, the plaintiff must establish that the copying is actionable by proving that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar.

The plaintiff may satisfy his first-step burden by either direct or circumstantial evidence. Plagiarists rarely work in the open and direct proof of actual copying is seldom available. To fill that void, the plaintiff may satisfy his obligation indirectly by adducing evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying. We have referred to that degree of similarity as "probative similarity." This requirement of probative similarity is somewhat akin to, but different than, the requirement of substantial similarity that emerges at the second step in the progression.

The substantial similarity requirement focuses holistically on the works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression. Summary judgment on this issue is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work.

*Id.* at 18 (citations and most internal punctuation omitted).

The plaintiff's first argument asserts that expert testimony is not appropriate with respect to probative similarity in this case because "[n]one of the works here are technical in nature . . . and courts in copyright cases have made clear that expert testimony on probative similarity is not appropriate where the works can be compared easily by the jury." Expert Motion at 8 (citing *Interplan Architects, Inc. v. C. L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4065465, at *11 (S.D. Tex. Oct. 9, 2010) (architectural plans) and *Price v. Fox Entm't Group, Inc.*, 499 F.Supp.2d 382, 388-89 (S.D.N.Y. 2007) (movie scripts)). The defendants assert in response that

"it is well established that expert testimony is generally admissible on the issue of probative similarity."  Expert Opposition at 8.

Expert opinion on the issue of probative similarity was admitted in *Gordon.*  409 F.3d at 20-24.  I see no need to bar Missakian's testimony on this point.  In addition, where, as here, access to the original work is undisputed, the court need not address probative similarity because, assuming that probative similarity exists, the claim will fail if the plaintiff cannot demonstrate substantial similarity.  *Blakeman v. The Walt Disney Co.*, 613 F.Supp.2d 288, 298, 302 n.3 (E.D.N.Y. 2009).

Moreover, one of the cases cited by the plaintiff is easily distinguishable.  The court in *Interplan* allowed all of an expert's testimony except with respect to substantial similarity, which it found to be a legal conclusion  2010 WL 4065465 at *11-*12.  There is no reference at the page cited by the plaintiff to ease of comparison of the works by a lay jury.  The court in the second cited case, *Price*, found, at the pages cited by the plaintiff, that no rational juror could find that the works at issue were so similar that coincidence and independent creation were precluded, and did preclude the proposed testimony of the plaintiff's expert on the ground that the two movie scripts at issue were "not highly technical works" and could be reviewed for similarities by lay jurors.  499 F.Supp.2d at 388-89.  However, I am not convinced that the designs at issue here present a similar question, devoid of nuance, for a jury's consideration.

The analysis of substantial similarity requires a side-by-side comparison of the works at issue to determine whether a layman would view the two works as substantially similar.  *Gordon*, 409 F.3d at 18. The use of the lay observer standard does not mean that expert testimony may never be allowed on this issue, however.

> [A]n overall impression of similarity may not be enough.  If such an impression flows from similarities as to elements that are not themselves

> copyrightable, it will not satisfy the predicate requirement of originality
> necessary to ground a finding of actionable copying.

*Id.* at 19 (citations and internal punctuation omitted).  This appears to me to be the thrust of Missakian's analysis.   So long as Missakian is not allowed to offer a conclusion that the works at issue do meet the legal standard for substantial similarity, I see no need to exclude her testimony, at least at the summary judgment stage of this case.  *See T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 116 (1st Cir. 2006) ("We have not, however, uniformly rejected the use of expert testimony on substantial similarity.").

The plaintiff's criticisms of Missakian's methodology, Expert Motion at 6, 9; Expert Reply at 4-5, go to the weight to be accorded to her opinions rather than their admissibility.  The court is aware of no technical standard generally applicable to textile design, and the parties do not refer to any such standard.  Thus, the court cannot hold a proffered expert to a particular method to be utilized in reaching his or her conclusions about such a design.  *See generally Angela Adams Licensing, LLC v. Surya Carpet, Inc.*, No. 07-77-P-H, 2008 WL 686868, at *3 (D. Me. Mar. 10, 2008) (discussing expert's methodology).

### 3.  Waves and Pebbles

The plaintiff asserts that the defendants "announced for the first time" in their memorandum submitted under this court's Local Rule 56(h), which requires a conference with the court before a motion for summary judgment may be filed, that Missakian will testify "that there are only a limited number of ways to express the idea" of waves and pebbles.  Expert Motion at 3.  The defendants contend that such testimony supports an argument that the "merger doctrine" should apply in this case, resulting in the application of a heightened version of the "substantial similarity" test to the plaintiff's claims.  *Id.*  The plaintiff counters that Missakian's report does not include any such opinion and, rather, states that there are numerous ways in

8

which to depict waves and pebbles. *Id*. It invokes Fed. R. Civ. P. 26(a)(2)(B) to support its argument that this omission bars Missakian from now opining in a manner that would allow the defendants to invoke this doctrine. *Id*. at 10.

The defendants do not respond directly to this argument, asserting only that, when copyrighted designs are inspired by nature, the merger doctrine applies. Expert Opposition at 10. While the fact that Missakian will apparently testify at trial in a manner contrary to some portion of her report goes only to the weight of her testimony rather than providing a reason to exclude it, the plaintiff's assertion that the defendants, by raising the merger doctrine only after discovery has closed, are indulging in "trial by ambush," Expert Reply at 7, appears to be justified. *See, e.g., Pennell v. Vacation Reservation Ctr., LLC,* No. 4:11cv53, 2011 WL 6960814, at *3 (E.D. Va. Sept. 20, 2011). I leave it to the trial judge to determine whether this defense may be pressed at trial, but I will not consider it in connection with this recommended decision on the motion for summary judgment.

## II.  The Motion for Summary Judgment

### A.  Applicable Legal Standard

#### 1.  Fed. R. Civ. P. 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id*. (quoting

*Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### 2. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id.* The nonmoving party may also

submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id.* The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

### B.  Factual Background

The summary judgment record includes a joint statement of facts as well as an additional statement of facts submitted by the defendant. Factual statements taken from the former will be followed by a single citation to the supporting document. Factual statements taken from the latter will have two citations to the record, one to the defendant's statement of additional facts and one to the plaintiff's response to that document.

Homestead International Group Ltd. ("Homestead") designs and develops products for the home. Joint Statement of Facts ("Joint SMF") (ECF No. 131) ¶ 1. In 2008, the defendants ("Wal-Mart") approached Homestead to assist them with relaunching an existing home furnishings brand called Hometrends. *Id*. ¶ 2. The purpose of the relaunch was to create a brand that represented a more current style than Wal-Mart's Better Homes & Gardens brand, which was traditional. *Id*. ¶ 3. The relaunch has three components: a world influence, a nature influence, and a contemporary/modern style. *Id*. ¶ 4.

Wal-Mart directed Homestead to a target customer based on its research. *Id*. ¶ 5. One of the reasons Wal-Mart selected Homestead for the relaunch was because Homestead was able to design across many product categories and to source product. *Id*. ¶ 7. Homestead was to create the brand aesthetic. *Id*. ¶ 6. It was responsible for providing Wal-Mart with color direction, current trends in the marketplace, and the brand logo, copy, and packaging. *Id*. ¶ 8. Homestead and Wal-Mart entered into a written design services agreement on August 1, 2010, which Wal-Mart terminated by letter on June 13, 2011. *Id*. ¶¶ 9-10.

The currently operative complaint in this action, the Second Amended Complaint, alleges that Homestead, Keeco LLC, and Wal-Mart have willfully infringed a design owned by the plaintiff called Manfred, by marketing, distributing, selling, and offering a bed-in-a-bag product bearing a design called Ellington. *Id*. ¶¶ 12-13. It also alleges the Homestead, LF USA, Inc., and Wal-Mart have willfully infringed the Manfred design by marketing, distributing, selling, and offering to sell decorative pillows bearing a design called Lyra. *Id*. ¶ 14.

The operative complaint also alleges that Homestead, LF USA, and Wal-Mart have willfully infringed a design owned by the plaintiff called Spike by marketing, distributing, selling, and offering to sell decorative pillows bearing a design called Mandala. *Id*. ¶ 15. It also

12

alleges that these three entities have willfully infringed a design owned by the plaintiff called Pebble by marketing, distributing, selling, and offering to sell decorative pillows bearing a design called Costa.  *Id.* ¶ 16.  Finally, the operative complaint alleges that Homestead and Wal-Mart have willfully infringed the Manfred design by marketing, distributing, selling, and offering to sell curtains bearing the Ellington design.  *Id.* ¶ 17.

Wal-Mart did not design the Ellington bedding and curtains or the Lyra, Mandala, and Costa decorative pillows.  *Id.* ¶ 18.  The original colorway of the Ellington bedding was red, black, and white.  *Id.* ¶ 19.   The brown and blue Ellington design was added on July 14, 2009, at Wal-Mart's request.  *Id.* ¶ 20. Wal-Mart sold the Ellington bedding and curtains and the Lyra, Mandala, and Costa decorative pillows to consumers.  *Id.* ¶ 21.  Keeco supplied the Ellington bedding to Wal-Mart.  *Id.* ¶ 22.  LF USA supplied the Costa and Mandala decorative pillows to Wal-Mart.  *Id.* ¶ 23.

The plaintiff possesses a certificate of copyright registration from the United States Copyright Office for a design called Manfred, which issued on February 10, 1999.  *Id.* ¶ 24.  The date listed on the certificate for creation of the design is 1998.  *Id.* ¶ 25.  Angela Adams, the Creative Director/Managing Director of the plaintiff, created the Manfred design by drawing it by hand, without the aid of a computer.  *Id.* ¶ 26.

The plaintiff possesses a certificate of copyright registration from the United States Copyright Office for a designed called Pebble, which issued on November 30, 2004, and lists a date of creation as 2004.  *Id.* ¶¶ 27-28.  Adams created the Pebble design by hand.  *Id.* ¶ 29.

The plaintiff possesses a certificate of copyright registration from the United States Copyright Office for a design called Spike, which issued on July 27, 2000, listing a year of creation of 1999.  *Id.* ¶¶ 30-31.  Adams created the Spike design by hand.  *Id.* ¶ 32.

From 2005 until June 23, 2008, the plaintiff and Homestead operated under a license agreement to create, *inter alia*, soft goods such as bedding, bath, and table-top designs for retailers such as Marshall Fields and Bed Bath and Beyond. *Id*. ¶ 33. The design files that the parties shared were created using two computer programs: Adobe Photoshop and Adobe Illustrator. *Id*. ¶ 34. The parties entered into a written license agreement dated April 1, 2006, which was amended in October 2006 (the "License"). *Id*. ¶ 35. The brands under which products were to be sold under the License were Angela Adams and Modern Comfort by Angela Adams. *Id* ¶ 36.

In late 2005, Homestead and the plaintiff were working on a coverlet bearing the Manfred design, but called Lulu. Additional Statements of Fact in Opposition to Summary Judgment ("Plaintiff's SMF") (included in Plaintiff's Statement of Material Facts in Dispute (ECF No. 149-1) beginning at 41) ¶ 144; Defendants' Reply Statement of Disputed Material Facts ("Defendants' Responsive SMF") (ECF No. 163) ¶ 144. In early 2006, Homestead and the plaintiff were working on Manfred bedding for Marshall Fields. *Id*. ¶ 145. In the spring and summer of 2007, Homestead was working on bath products bearing the Manfred design. *Id*. ¶ 149.[2]

A meeting with Bed Bath and Beyond took place on March 29, 2007. *Id*. ¶ 153. The plaintiff authorized Homestead to present a tan Manfred bedding design at this meeting. *Id*. ¶ 155.[3] The parties collaborated on the Rounded Rectangles 2 design, which was created on April 25, 2007, for presentation to Bed Bath and Beyond. Joint SMF ¶¶ 37-38. The Rounded

---

[2] The defendant's response to this paragraph of the plaintiff's statement of material facts is qualified in a manner not relevant to the portion of the paragraph included in this sentence.

[3] The defendant's response to this paragraph of the plaintiff's statement of material facts is qualified in a manner that is not relevant to the portion of the paragraph that provides the basis for this sentence of the text.

Rectangles 3 bed design was created by the plaintiff for presentation to Bed Bath and Beyond through Homestead.  *Id.* ¶ 39.

Mr. Greenstein, the president of Homestead, testified that he did not know whether Homestead had shown its own designs under the Modern Comfort brand at that meeting and that "[i]t's likely that Homestead showed designs that were not Angela Adams designs at that meeting, whether they could be Modern Comfort or not would be a source of later discussion." Plaintiff's SMF ¶ 158; Defendants' Responsive SMF ¶ 158.[4]

The plaintiff terminated the parties' license by letter dated June 23, 2008.  Joint SMF ¶ 40.

## C.  Discussion

### 1.  Actual Copying (Probative Similarity)

The defendants contend that the plaintiff cannot prove that there is a sufficient degree of similarity between the works at issue to give rise to an inference of copying.  Defendants' Motion For Summary Judgment ("Summary Judgment Motion") (ECF No. 135) at 11-21.[5] Specifically, they contend that each of the copyrighted designs at issue has "few if any" original elements, *id.* at 13-19, and that the only protection provided by the copyright is to the "precise arrangement, composition and expression" of the unprotected elements.  *Id* at 15, 17, 19. However, they also assert that "[t]he combination of [the] elements cannot be protected as a matter of law because they are not original."  *Id.* at 19.

The paragraphs of the defendants' statement of material facts cited in support of this assertion, Defendants' SMF ¶¶ 104-08, are all drawn from Missakian's report, and all are

---

[4] The defendant's response to this paragraph of the plaintiff's statement of material facts is qualified in a manner that is not relevant to the portion of the paragraph cited in the text.
[5] The defendants concede for purposes of their summary judgment motion that they had access to the plaintiff's relevant work.  Summary Judgment Motion at 12 n.11.

disputed by the plaintiff, Plaintiff's Responsive SMF ¶¶ 104-08.[6]  However, the objections cite

no record support for the disputes and, therefore, are effective only "to the extent that [each]

statement purports to state a legal conclusion as to whether the designs at issue are 'original.'"

*Id*.  None of the cited paragraphs expresses a legal conclusion that any particular copyrighted

design is itself not original.  Rather, the paragraphs state that certain elements of the designs are

not "original to Angela Adams" and, in one case, that the "only original aspect of the Manfred

design is the particular combination of the selection and arrangement of the Manfred motifs[.]"

*Id*. ¶¶ 104-07, 108.

The inquiry does not end here, however.  The cited paragraphs do not support the

defendants' assertion that "[t]he combination of those elements cannot be protected as a matter

of law because they are not original."  Summary Judgment Motion at 19.  If "they" refers to the

identified elements of the designs, as the plural form of the word suggests, the statement

contradicts the defendants' earlier assertion that "the particular combination of the selection and

arrangement of the Manfred motifs in clusters[,] with a hand-drawn vertical line connecting them

in pairs, groups or clusters and where the lines have varying lengths[]" is original, *id*. at 15, and,

therefore, presumably protected.  If "they" means the combination itself, the defendants have

already conceded that the plaintiff's particular combination of the elements is original.

> Even when the work at issue is a compilation of preexisting
> design elements, the originality threshold remains low: "Copyright
> protection may extend to such a compilation, even if the material of
> which it is composed is not copyrightable itself . . . ; it is sufficient if
> original skill and labor is expended in creating the work."  *M. Kramer
> Mfg.* [*Co. v. Andrews*], 783 F.2d [421,] 438 [4th Cir. 1986] (internal
> citations and quotations marks omitted).  "The mere fact that component
> parts of a collective work are neither original to the plaintiff nor
> copyrightable by the plaintiff does not preclude a determination that the
> combination of such component parts as a separate entity is both original

---

[6] The plaintiff's identical objection to each of these paragraphs, that they are "vague, opinion and . . . irrelevant," Plaintiff's Responsive SMF ¶¶ 104-08, is overruled.

and copyrightable." *Id.* (internal citation and quotation marks omitted). For compilations of preexisting elements, "the principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection." *Feist* [*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,] 358 [(1991)].

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010). *See also Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).

Accordingly, I reject the defendants' contention that the elements of each design at issue are not protectable because the use of hand-drawn figures, the connection of such figures on a vertical axis, pebble designs or arrangements of such designs, and waves or undulating bands are not "original," and, therefore, presumably, there can be no probative similarity between their designs and those of the plaintiff. Summary Judgment Motion at 13-19. Those are not the only "elements" of the plaintiff's designs that are to be compared in order to determine probative similarity.

In light of this conclusion, it is not difficult to discern disputed material facts that preclude summary judgment on the question of probative similarity. Probative similarity "requires only the fact that the infringing work copies something from the copyrighted work." *Ringgold v. Black Ent'mt Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997). There is evidence in the summary judgment record, including but not limited to visual comparison of the designs themselves and Missakian's report, that would allow, with inferences drawn in favor of the plaintiff, a reasonable factfinder to conclude that "there are similarities between [each set of] two works that would not be expected to arise if the works had been created independently." *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1337 (S.D.N.Y. 1997).

## 2. Independent Creation

The defendants contend that, even if the plaintiff could prove actual copying, "the Court may nonetheless find a lack of copying if the Defendants show independent creation of the Accused Designs."  Summary Judgment Motion at 21.  Independent creation is a complete defense to a claim of copyright infringement.  *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 106 (1st Cir. 2011).  The plaintiff suggests in response that independent creation should always be a matter left to trial, because it is "highly fact-intensive."  Summary Judgment Opposition at 11-12.

Although the plaintiff cites no authority in support of this absolutist position, it does, more persuasively, point to evidence that the defendants have proffered conflicting evidence of the identity of the individual or individuals who supposedly independently created each of the designs at issue.  *See, e.g.,* Plaintiff's SMF ¶¶ 164-176, 178-79, 181.[7]  In addition, the plaintiff has disputed[8] many of the paragraphs of the defendants' statement of material facts upon which they rely, Summary Judgment Motion at 21-23, in making this argument.  Defendants' SMF ¶¶ 14, 17, 19-22, 43, 49-50, 52-54, 59-63, 68-69, 74, 80, 82, 84, 140; Plaintiff's Responsive SMF ¶¶ 14, 19-21, 54, 63, 68-69, 74, 80, 84, 140.  In addition, the plaintiff's objections to paragraphs 43, 49, 52, and 59-62 are well-taken.  The remaining five paragraphs are not enough to support summary judgment on the defense of independent creation as to any of the three designs at issue.

---

[7] The defendants' requests to strike paragraphs 165, 167-68, 172, and 175, Defendants' Responsive SMF ¶¶ 165, 167-68, 172, 175, are denied.  The requests are based on the assertion that the paragraphs mischaracterize the cited testimony; my review of the cited testimony leads me to reject this assertion.  In addition, the Defendants' Motion for Leave to File a Surreply to Plaintiff's Reply Statement of Material Facts in Dispute (ECF No. 169) and the "counter-motion" included in the Plaintiff's Response to Defendants' Motion for Leave to File a Surreply and Counter-Motion for Leave to File Replacement Statement of Facts in Dispute (ECF No. 172) are denied.  In addition to their lack of timeliness, the motions would extend the time for filing statements of fact virtually indefinitely, if granted.

[8] The plaintiff uses the word "disputed" rather than the word "denied" required by this court's Local Rule 56(c), (d) when responding to individual paragraphs of the defendants' statement of material facts.  The defendants contend that each such response should be stricken and the paragraph deemed admitted.  Defendants' Responsive SMF at 2.  That sanction is too draconian, and there can be no suggestion that the responses at issue were intended to convey anything other than a denial.

On the showing made, the defendants' claim of independent creation remains in dispute.

### 3. Substantial Similarity

The defendants' final argument is that there is no substantial similarity between the plaintiff's copyrighted designs and the accused products. Summary Judgment Motion at 23-32. The parties agree that the "ordinary observer" test is applicable to the plaintiff's claims on this issue. *Id.* at 23; Summary Judgment Opposition at 12. Under this test, "the defendant's work will be said to be substantially similar to the copyrighted work if an ordinary person of reasonable attentiveness would, upon [observing] both, conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005).

"Summary judgment on substantial similarity is 'unusual' but can be warranted on the right set of facts." *T-Peg*, 459 F.3d at 112. "Summary judgment on this issue is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work." *Gordon*, 409 F.3d at 18. "[I]t is only when the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively, that no infringement results." *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 66 (1st Cir. 2000) (citation and internal punctuation omitted).

This is a high summary judgment standard, one which the defendants have not convinced me that they have met. They provide a list of a total of 11 very specific asserted dissimilarities between each of the designs at issue and its alleged infringing product: 5 for Ellington, 2 for Lyra, and 4 for Costa. Summary Judgment Motion at 26-32. The plaintiff responds that a

component-by-component comparison is not appropriate in a substantial similarity analysis, Summary Judgment Opposition at 31-36; that the defendants' argument rests on the opinions of Missakian, who is an expert rather than an ordinary observer, *id*. at 37; and that there are several specific similarities between each of the pairs of designs, should the court reject its assertion that viewing the works as a whole is the appropriate method of judging substantial similarity, *id*. at 37-38.[9]

The defendants' emphasis on a component-by-component comparison of each of the plaintiff's designs with its alleged infringing product is curious, given their repeated assertions that the plaintiff's copyrights must be given "only narrow protection" and that only "the specific selection and arrangement of design elements embodied in the deposit copies filed with the certificates of registration" are protected. Defendant's Reply Memorandum in Support of Their Motion for Summary Judgment ("Summary Judgment Reply") (ECF No. 159) at 2, 4. Indeed, the defendants' discussion of applicable law suggests that a component-by-component comparison is appropriate only when considering probative similarity. Summary Judgment Motion at 11-21. Once probative similarity has been found, an issue that remains unresolved in this case, then, it seems, the copyrighted work and the accused work are to be compared as wholes. *See, e.g., Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.2d 127, 134 (2d Cir. 2003) (rejecting examination of similarity between components of works viewed in isolation); *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 966 (8th Cir.

---

[9] I reject the plaintiff's contention that "[t]his Court has already ruled, in denying Defendants' motion to dismiss, that a reasonable jury could find that the Manfred and Ellington designs are substantially similar." Summary Judgment Opposition at 32. My recommended decision on the defendants' motion to dismiss, ECF No. 64, cannot serve as law of the case for a motion for summary judgment. The applicable legal standard for each motion is obviously different, not to mention the fact that the decision on a motion to dismiss is made primarily on the pleadings, while a motion for summary judgment by definition includes consideration of evidence. My recommended decision on the defendant's motion to dismiss did include some consideration of the plaintiff's Manfred and the defendants' accused Ellington designs, but concluded, significantly, "on the showing made" that a reasonable jury could find that the two designs are substantially similar. The showing made in connection with this motion for summary judgment involves considerably more evidence.

2005) (same); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 939 (7th Cir. 1989) (same). *See also Matthews v. Freedman*, 157 F.3d 25, 28 (1st Cir. 1998).

The defendants' arguments on substantial similarity, when properly framed, go more to the weight to be given certain elements of the competing designs than to any preclusive lack of proof. A reasonable jury could find, based on the evidence in the summary judgment record, that the "total concept and feel" of the allegedly infringing designs, *see Tufenkian*, 338 F.3d at 134, in one or more cases, is substantially similar to that of the corresponding plaintiff's design. Nothing more is necessary at this stage of the proceedings.

This conclusion makes it unnecessary to resolve the parties' dispute about the use of derivative designs in the process of infringement analysis. Summary Judgment Opposition at 34-36, Summary Judgment Reply at 4-5. The parties should seek resolution of this dispute before trial, however.[10]

### III.  Conclusion

For the foregoing reasons, the plaintiff's motion to exclude the testimony of Anais Missakian (ECF No. 132) is **DENIED** without prejudice to its reassertion before trial, the defendants' motion for leave to file a surreply (ECF No. 169) is **DENIED**, the plaintiff's motion for leave to file a replacement statement of facts (ECF No. 172) is **DENIED**, and I recommend that the defendants' motion for summary judgment (ECF No. 135) be **DENIED.**

### IV.  Sealing of This Decision

I **DIRECT** the Clerk of the Court to seal this decision when docketed. The parties shall notify me by noon on Thursday, January 3, 2013, whether this decision contains any confidential

---

[10] I disagree with the defendants' contention that the plaintiff, by using a representative comparison of a portion of one of its designs and that of its accused counterpart at page 19 of its memorandum of law, "is improperly trying to use its [Manfred] copyright as a trademark." Summary Judgment Reply at 5-6. This argument is raised for the first time in the defendants' reply brief, thus depriving the plaintiff of an opportunity to respond, and it does not appear as a stated defense in the defendants' answers. ECF Nos. 9 & 11. It is not properly before the court at this time.

information that should remain sealed and, if so, indicate explicitly what language should be redacted, with due regard to the public's interest in access to court proceedings.  If I do not hear form the parties by noon on January 3, this decision will be unsealed.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of December, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge